*663 OPINION.
Trussell:
The «property is situated in Santa Monica, Calif., near Los Angeles, and has a frontage of 400 feet on the ocean with “ pier rights.” The values are computed on the front-foot basis. It is imdisputed that the property was sold in September, 1920, for $240,-000 and that it was acquired in the year 1911 and entered on taxpayer’s books at $160,000. The witnesses for the taxpayer were William Aikins and Carl F. Schader. Aikins had been engaged in the real estate business in Santa Monica for 14 years and had been a member of the local State and national insurance and real estate associations. He was familiar with the value of real estate in this district and knew the particulars of two large sales of real estate close to taxpayer’s property on or about March 1, 1913. Aikins was also a witness in the condemnation- proceedings referred to in the findings of fact, in which a portion of the taxpayer’s land was included. He had been also an expert witness on land values in other financial proceedings in that city. Aikins testified that the fair market value of this land on March 1, 1913, was $600 per front foot, or $240,000.
Schader also was an experienced real estate dealer, doing business in this district during the year 1913. He had lived in Santa Monica and Los Angeles since 1888. Lie personally had disposed of approximately $1,000,000 worth of real estate facing the ocean front near the property in question. He was also familiar with the sales referred to in Aikins’ testimony, and had testified as an expert in various condemnation proceedings in Santa Monica. Furthermore, he had the property in question listed at $600 per foot in 1913 and 1914, but no sale resulted. He, personally, in 1913, offered $500 per front foot, which offer was refused. He placed a fair market value as of March 1, 1913, on the property in question of $550 per front foot.
From the evidence adduced, the property was evidently worth over $500 per front foot, or $200,000, as an offer of $500 was refused by the taxpayer in 1913. On the other hand, the value must have been less than $600 per front foot, as this property seems to have been listed for sale at that price in 1913 and 1914 and there were no buyers.
The actual cost of the properety here in question was not proven by evidence produced at the hearing, but, in view of the fact that the taxpayer carried this property upon its books at a value of $160,000, it is taken for granted that its actual cost was not in excess of that amount.
The record of this appeal places before us varying values of properties situated near to the land here in question which have been the *664 subject of sales made in the year 1913, the valuations of two capable experts who are not in agreement, and also a valuation of the land in question determined in the course of an exercise of eminent domain for street-widening purposes.
The Board is thus placed in the position of having to weigh the conflicting evidence and to arrive at its own determination of value. The situation here is not unlike the one presented in the Appeal of Esther Firestone, 2 B. T. A. 309, and differs only in degree from the situation presented in the Appeal of American Express Co., 2 B. T. A. 498. In view of all the facts contained in the record and the opinion testimony, we have arrived at the conclusion that the fair market value of the land here in question, on March 1, 1913, was $525 per front foot, or $210,000, and that the taxable gain with which this taxpayer must be charged in the year 1920 is the difference be-tweeen the last-named figure and the net amount realized from the sale.
Arundell not participating.